**NOT FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

_____

No. 24-14040
Non-Argument Calendar
_____

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*versus*

DOMINIC GIANNANTONIO,

*Defendant-Appellant.*

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 8:23-cr-00181-CEH-TGW-3
_____

Before ROSENBAUM, GRANT, and HULL, Circuit Judges.

PER CURIAM:

After a guilty plea, Dominic Giannantonio appeals his 135-month prison sentence on multiple 21 U.S.C. § 846 drug convictions. Particularly, Giannantonio argues the district court

erred in calculating his offense level (1) by applying a two-level enhancement for possession of a firearm under U.S.S.G. § 2D1.1(b)(1) because firearms were present at the site of Giannantonio's drug sale and Giannantonio had not shown that the firearms were unconnected to the drug offense; and (2) by denying him a zero-point offender reduction under U.S.S.G. § 4C1.1 because he had received that firearm enhancement.

After careful review, we discern no error in the application of the two-level firearm enhancement under § 2D1.1(b)(1). However, § 4C1.1(a)(7) has different language, and the district court failed to make the necessary fact findings as to the zero-point offender reduction under § 4C1.1. We thus vacate Giannantonio's 135-month sentence and remand for resentencing.

## I.   FACTUAL BACKGROUND

Between December 2022 and June 2023, Giannantonio participated in a drug trafficking organization and conspiracy led by co-defendant Eric Lemon. While this appeal is by only Giannantonio, his co-defendants in this case are: Eric Lemon, Eric Lemon Jr., and Tryon Byrd IV. Lemon's illegal drug organization also included numerous unindicted co-conspirators. Among other drug trafficking, the group sold cocaine, methamphetamine, and other narcotics to undercover officers and confidential informants in eleven controlled-buy operations.

Lemon's group operated from several homes in Saint Petersburg, Florida: (1) 3604 6th Avenue South; (2) 3432 17th Avenue South; and (3) 3528 19th Avenue South. The 6th Avenue

house belonged to Byrd's family, and Byrd's driver's license listed the house as his address. Lemon owned the 17th Avenue house until March 2023, when he deeded it to his girlfriend. Giannantonio reported to probation that he "occasionally stayed" at all three houses but otherwise was homeless for five years preceding his arrest in this case.

Giannantonio sold controlled substances to undercover officers on four occasions.

### A.    6th Avenue House Sale

The indictment charged, and the evidence proved, that Giannantonio's first sale took place at the 6th Avenue house on December 7, 2022. Giannantonio, Lemon Jr., and an unindicted co-conspirator agreed to sell an undercover officer one ounce of cocaine. Lemon Jr. and the unindicted co-conspirator then drove away to retrieve the drugs.

While his two colleagues were absent, Giannantonio negotiated a deal to sell the undercover officer an ounce of methamphetamine. Upon his return, Lemon Jr. tried to enter the courtyard in front of the 6th Avenue house, but found it locked. Lemon Jr. blamed Giannantonio for the inconvenience, saying: "Why you got the gate locked? You knew I wasn't going to be long, and you know I'm dirty right now."

Lemon Jr. passed the drugs to Giannantonio, who then provided the undercover officer with 27.42 grams of cocaine and 28.17 grams of methamphetamine, as confirmed by subsequent laboratory testing. To facilitate future deals, Lemon Jr. provided

the undercover officer with a number to the group's shared phone (the "trap phone").

During Giannantonio's sentencing hearing, the government represented that all the controlled buys at the 6th Avenue house took place outside the house in a "front courtyard area." Giannantonio does not dispute that representation, which is consistent with the PSI's description of Lemon Jr. returning to the December 7, 2022, sale and complaining that Giannantonio had locked the courtyard gate.

## B.    19th Avenue House Sales

Giannantonio's remaining sales described in the PSI took place at the 19th Avenue house.

On February 2, 2023, Giannantonio answered an undercover officer's call to the trap phone and agreed to sell methamphetamine and cocaine. Giannantonio directed the undercover officer to the 19th Avenue house, where he sold them 55.83 grams of cocaine and 26.7 grams of methamphetamine.

On March 1, 2023, co-defendant Lemon and Giannantonio sold a confidential informant 3.37 grams of cocaine outside of the 19th Avenue house.

Then, on March 9, 2023, Giannantonio again answered an undercover officer's call to the trap phone. The undercover officer requested a large quantity of methamphetamine, so Giannantonio said he would have to "get with Big Homie." Call records indicate that the trap phone placed a call to Lemon's phone, and

Giannantonio subsequently told the undercover officer that "he said come on." Giannantonio met the undercover officer outside the 19th Avenue house and sold them 191.9 grams of actual methamphetamine.

## C.    Search Warrant

On June 1, 2023, members of the Saint Petersburg Police Department and the Bureau of Alcohol, Tobacco, Firearms and Explosives executed search warrants on the 6th Avenue and 17th Avenue houses. The houses collectively contained large quantities of methamphetamine, cocaine, and synthetic drugs.

The 6th Avenue house also contained four firearms, including (1) a Raven Arms .25 caliber handgun, serial number 030472; (2) a loaded Smith & Wesson .38 caliber revolver, serial number 87216; (3) a Bryco 9mm handgun, serial number 763843; and (4) a CZ 9mm handgun, serial number 181119. DNA analysis later indicated that DNA found on the Smith & Wesson revolver belonged to co-defendant Lemon.

Notably, law enforcement found the Raven Arms handgun on a kitchenette counter and the remaining firearms in or around a sofa located in a room "immediately adjacent" to the 6th Avenue house's courtyard.

## II. PROCEDURAL HISTORY

## A.    Indictment and Guilty Plea

In September 2023, a grand jury in the Middle District of Florida returned an eleven-count superseding indictment against

Giannantonio, Lemon, Lemon Jr., and Byrd. As relevant here, Count One charged Giannantonio with conspiring to possess with intent to distribute methamphetamine and cocaine, in violation of 21 U.S.C. §§ 846, 841(b)(1)(A), 841(b)(1)(C). Counts Two, Three, Six, Eight, and Nine corresponded to the different controlled buys and charged Giannantonio with possessing varying amounts of methamphetamine and/or cocaine with the intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C).[1]

In August 2024, Giannantonio pled guilty to all six counts naming him as a defendant.[2]

## B.    Presentence Investigation Report

A probation officer prepared a presentence investigation report ("PSI") using the 2023 Sentencing Guidelines manual. The PSI grouped Giannantonio's convictions together and calculated a total offense level of 35, consisting of: (1) a base offense level of 34

---

[1] Counts Two and Three both related to the December 7, 2022, sale at the 6th Avenue house. Specifically, Count Two charged Giannantonio and co-defendant Lemon Jr. with possessing cocaine with intent to distribute, while Count Three charged only Giannantonio with possessing methamphetamine with intent to distribute. So, Giannantonio's participation in the four controlled buys described in the PSI underlie five possession with intent to distribute counts in the indictment.

[2] Lemon and Lemon Jr. pled guilty to (1) a conspiracy to possess with intent to distribute a controlled substance count and (2) various possession with intent to distribute controlled substances counts. Byrd pled not guilty and proceeded to trial on a second superseding indictment. A jury found Byrd guilty on a conspiracy count and three possession of a controlled substance with intent to distribute counts.

based on a converted drug weight of 25,278.28 kilograms, pursuant to U.S.S.G. § 2D1.1(a)(5) and (c)(3); (2) a two-level increase because a firearm was possessed, pursuant to U.S.S.G. § 2D1.1(b)(1); (3) a two-level increase for maintaining a premises for the purpose of manufacturing or distributing a controlled substance, pursuant to U.S.S.G. § 2D1.1(b)(12); (4) a two-level decrease for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1(a); and (5) an additional one-level decrease for Giannantonio timely notifying the government of his intent to plead guilty, pursuant to U.S.S.G. § 3E1.1(b).

With a total offense level of 35 and a criminal history category of I, the PSI calculated Giannantonio's advisory guidelines range to be 168 to 210 months of imprisonment.

Giannantonio made two guidelines objections to the PSI. First, Giannantonio argued the § 2D1.1(b)(1) enhancement for firearm possession should not apply because the firearms found in the 6th Avenue house were not connected to Giannantonio's drug offenses. Giannantonio suggested that no evidence showed he knew about the firearms within the 6th Avenue house.

Second, Giannantonio contended he should receive a two-level reduction to his offense level under § 4C1.1, which provides a potential reduction for offenders with zero criminal history points. Giannantonio separately requested a downward variance from his advisory guidelines range.

## C.    Sentencing Hearing in November 2024

At Giannantonio's sentencing hearing, the parties presented argument regarding the objections to the PSI. For both his objections, Giannantonio's counsel again argued that the "only connection" between the firearms and his offenses was the location of the firearms inside the 6th Avenue house. Giannantonio also pointed out that "[t]here's no allegation that [Giannantonio] ever possessed a firearm personally."

In response, the government acknowledged the § 2D1.1(b)(1) enhancement did not apply based on Giannantonio's actual possession of a firearm since "nothing in the record . . . put a gun in Mr. Giannantonio's hand." But the government contended it did not need to show actual possession, since § 2D1.1(b)(1) required the government to show only that the firearm was present at the site of the charged drug offense conduct. *See United States v. Stallings*, 463 F.3d 1218, 1220 (11th Cir. 2006).

The government submitted that the undisputed facts of the PSI showed the firearms were present at the 6th Avenue house. Specifically, the government said the guns were found in a room "immediately adjacent" to the 6th Avenue house's courtyard, where Giannantonio conducted the December 7, 2022, drug sale. Based on those undisputed facts, the government argued Giannantonio had not carried his burden of showing that a connection between the offense and firearm was "clearly improbable." *See id.* The government pointed out (1) that guns are tools of the drug trade; and (2) that the firearms in the 6th Avenue

house furthered deals in the outside courtyard since Giannantonio and his co-conspirators knew, "if there was an issue[,] they could step into that room and take out the firearms to use."

The district court agreed with the government and made fact findings that the firearms (1) were present during drug transactions to which Giannantonio pled guilty; and (2) Giannantonio had not shown that the firearms were unconnected to the drug offenses committed at the 6th Avenue house. Specifically, the district court found that the four firearms were discovered "at the 6th Avenue house . . . , which is the location where the drug transactions described in the [PSI] that Mr. Giannantonio participated in primarily occurred." The district court further found: "I don't think this is just an issue of proximity. I don't believe that the [d]efendant has established here that there was no probable connection between the guns, the firearms and the drugs as described here such that the firearms served no purpose for the crimes committed." Therefore, the district court concluded that the PSI properly applied the § 2D1.1(b)(1) firearm enhancement.

The district court also found that the application of the § 2D1.1(b)(1) firearm enhancement rendered Giannantonio ineligible for the § 4C1.1 zero-point offender reduction. The district court summarily said:

> So[,] the [d]efendant's objection as to the firearms enhancement is overruled, and because of that, [d]efendant would not be eligible to receive the two level departure to zero point offenders because that

provision excludes a reduction based upon allegations of firearm possession.

### D.    Imposition of Sentence

The district court granted Giannantonio's motion for a downward variance and lowered his total offense level by two levels, from 35 to 33. In so doing, the district court considered Giannantonio's history as a homeless drug addict, his low-level role in the charged conspiracy, and sentencing disparities for purer forms of methamphetamine.

At an offense level of 35, Giannantonio's advisory guidelines range was 168 to 210 months of imprisonment. The downward variance to an offense level of 33 reduced Giannantonio's advisory guidelines range to 133 to 168 months of imprisonment. *See* U.S.S.G. Ch. 5, Pt. A (2023) (Sentencing Table).

The district court sentenced Giannantonio to 135 months of imprisonment, consisting of concurrent terms on each of his six drug convictions.

### III.  STANDARD OF REVIEW

"We review *de novo* the interpretation and application of the Sentencing Guidelines." *United States v. Kluge*, 147 F.4th 1291, 1296 (11th Cir. 2025) (quoting *United States v. Dupree*, 57 F.4th 1269, 1272 (11th Cir. 2023) (en banc)). The district court's factual findings at sentencing, however, are reviewed under the clearly erroneous standard. *United States v. Bergman*, 852 F.3d 1046, 1070 (11th Cir. 2017) (citing *United States v. Moran*, 778 F.3d 942, 959 (11th Cir. 2015)).

## IV.  DISCUSSION

### A.    U.S.S.G. § 2D1.1(b)(1)—Firearm Enhancement

On appeal, Giannantonio argues the district court improperly applied § 2D1.1(b)(1)'s enhancement. Giannantonio says a connection between the firearms and his offense conduct was "clearly improbable" because he never actually possessed the firearms located inside the 6th Avenue house. We disagree.

Section 2D1.1(b)(1) of the Sentencing Guidelines provides for a two-level enhancement "[i]f a dangerous weapon (including a firearm) was possessed." U.S.S.G. § 2D1.1(b)(1). The § 2D1.1(b)(1) enhancement can be triggered not only by the defendant's possession of a firearm, but "may [also] be applied when the firearm is possessed by a co-conspirator." *United States v. Pham*, 463 F.3d 1239, 1245 (11th Cir. 2006) (citing *United States v. Fields*, 408 F.3d 1356, 1359 (11th Cir. 2005)); *see also* U.S.S.G. § 1B1.3(a)(1)(B) (including acts of co-conspirators as relevant conduct for Chapter Two guidelines).

The commentary for § 2D1.1(b)(1) states, "The enhancement should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." U.S.S.G. § 2D1.1(b)(1), cmt. n.11(A). Based on that commentary, this Court has set forth a burden-shifting framework to determine the applicability of § 2D1.1(b)(1). First, "[t]he government bears the initial burden of showing by a preponderance of the evidence that a firearm was present at the site of the charged conduct or that the defendant possessed a

firearm during conduct related to the offense of conviction." *United States v. Graham*, 123 F.4th 1197, 1288 (11th Cir. 2024) (citing *Stallings*, 463 F.3d at 1220). "If the government meets its initial burden, the evidentiary burden shifts to the defendant, who must demonstrate that a connection between the weapon and the offense was clearly improbable." *Id.* (citation modified).[3]

We discern no error, much less clear error, in the district court's fact findings and application of § 2D1.1(b)(1)'s enhancement to Giannantonio. *See United States v. George*, 872 F.3d 1197, 1204 (11th Cir. 2017) ("Whether a defendant possessed a firearm for purposes of § 2D1.1(b)(1) is a factual finding that we review under the clear-error standard." (citing *Stallings*, 463 F.3d at 1220)). First, the undisputed facts of the PSI supported a finding that the four firearms in this case were present at the site of Giannantonio's charged conduct. The guns were found inside the 6th Avenue house—just steps away from the house's courtyard where Giannantonio sold methamphetamine and cocaine. It matters not if the firearms remained inside while the controlled buys took place outside; the firearms were on the same premises and easily retrievable should a drug deal sour. That is enough to show proximity. *See United States v. Trujillo*, 146 F.3d 838, 847 (11th

---

[3] No party disputes this commentary's validity or our Court's framework for determining the applicability of § 2D1.1(b)(1). Therefore, we consider the burden-shifting framework set forth in our precedent. *See United States v. Jews*, 74 F.4th 1325, 1327 & n.2 (11th Cir. 2023) (considering guideline commentary where its validity and interpretation were not contested).

Cir. 1998) (concluding firearm in warehouse office was sufficiently proximate to drugs found "nearby in and around the warehouse").

Additionally, the conspirators here stored large amounts of drugs inside the 6th Avenue house, sometimes retrieving those drugs from within to complete sales. The firearms found in the same house were thus clearly present for conduct within the scope of the drug conspiracy to which Giannantonio pled guilty. *See United States v. Hall*, 46 F.3d 62, 64 (11th Cir. 1995) (affirming application of § 2D1.1(b)(1) enhancement where firearm found near "several drug-related objects" and in the house where conspiracy-related conversations occurred). Considering all these facts, the district court properly found the government carried its initial burden of showing proximity between the firearms and offense conduct.

Second, the district court did not err in finding that Giannantonio did not show that a connection between the firearms and his offense conduct was "clearly improbable." *Graham*, 123 F.4th at 1288. The firearms, at least one of which was loaded, were stashed to be easily accessible should the need arise during Giannantonio and his co-conspirator's drug dealings at the 6th Avenue house. By serving as available protection for contraband and the co-conspirators, the firearms were connected to Giannantonio's conduct. *See Fields*, 408 F.3d at 1359 (considering several firearms' availability to protect drug sales as supporting connection between firearms and conspiracy).

In sum, the district court did not clearly err in applying of a two-level enhancement under § 2D1.1(b)(1) to Giannantonio's offense level.

### B.    U.S.S.G. § 4C1.1—Zero-Point Offender Reduction

Giannantonio argues the district court erroneously found him ineligible for § 4C1.1's zero-point offender reduction.

As background, U.S.S.G. § 4C1.1 requires that the defendant's offense level be decreased by two levels if the defendant (1) "did not receive any criminal history points"; and (2) meets ten other criteria enumerated in § 4C1.1(a). U.S.S.G. § 4C1.1(a)(1)-(11). A defendant bears the burden of showing a sentence reduction is required under § 4C1.1. *See United States v. Wilson*, 884 F.2d 1355, 1356 (11th Cir. 1989).

As relevant here, one of the ten remaining criteria to receive a § 4C1.1 reduction is that "*the defendant* did not possess . . . a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense." *Id.* § 4C1.1(a)(7) (emphasis added).

Here, the district court found Giannantonio ineligible for a § 4C1.1 reduction because it had applied the § 2D1.1(b)(1) firearm enhancement. At Giannantonio's sentencing hearing (as recounted above), the district court said in full:

> So[,] the [d]efendant's objection as to the firearms enhancement is overruled, and because of that, [d]efendant would not be eligible to receive the two level departure to zero point offenders because that

provision excludes a reduction based upon allegations of firearm possession.

We acknowledge that the district court closely adhered to the framework we have set forth for determining the applicability of the § 2D1.1(b)(1) firearm enhancement. *See supra* Section IV.A. But § 2D1.1(b)(1) and § 4C1.1 are distinct guidelines provisions and subject to different standards amongst the "multiplicity of standards applying to a drug defendant's possession of a firearm." *United States v. Carillo-Ayala*, 713 F.3d 82, 87 (11th Cir. 2013).

The district court never made a factual finding that Giannantonio himself possessed any of the firearms found in the 6th Avenue house. That omission does not matter for the § 2D1.1(b)(1) firearm enhancement because this Court repeatedly has said that enhancement can be applied based on (1) a firearm's presence at the site of the charged conduct and connection to the offense, or (2) a co-conspirator's possession of a firearm. *See, e.g.*, *Graham*, 123 F.4th at 1288; *Pham*, 463 F.3d at 1245. But the absence of such a fact finding as to Giannantonio's firearm possession—actual or constructive—is problematic under § 4C1.1(a)(7) because, as the government acknowledges, § 4C1.1(a)(7) bars zero-point offender relief only when the defendant himself possesses a firearm. For several reasons, the government is correct that § 4C1.1 is a "defendant-focused" provision.

First, the plain text of § 4C1.1(a)(7) focuses on the defendant's own conduct. *See United States v. Rogers*, 989 F.3d 1255,

1261 (11th Cir. 2021) ("The language of the Sentencing Guidelines, like the language of a statute, must be given its plain and ordinary meaning . . . ." (quoting *United States v. Fulford*, 662 F.3d 1174, 1177 (11th Cir. 2011))). That subsection requires that "**the defendant** did not possess . . . a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense." U.S.S.G. § 4C1.1(a)(7) (emphasis added).

The language of § 4C1.1(a)(7) noticeably differs from the language of § 2D1.1(b)(1)'s firearm enhancement, which applies "[i]f a dangerous weapon (including a firearm) was possessed." *Id.* § 2D1.1(b)(1). So, while § 2D1.1(b)(1) does not specify who must have possessed a firearm, § 4C1.1(a)(7) goes further and requires that the possessor must have been "the defendant."[4]

Second, while § 4C1.1(a)(7)'s text is clear, this Court's interpretation of U.S.S.G. § 5C1.2's safety-valve provision in Chapter Five is instructive. Under certain circumstances, § 5C1.2 allows a defendant to be sentenced "without regard to any statutory minimum sentence." U.S.S.G. § 5C1.2(a). But, similar to

---

[4] Relevant conduct for Chapter 4 manual provisions, such as the two-level reduction in § 4C1.1, is limited to only "conduct and information specified in the respective guidelines." U.S.S.G. § 1B1.3(b). That stands in marked contrast to Chapter Two manual provisions, like § 2D1.1(b)(1)'s firearm enhancement, where relevant conduct includes, *inter alia*, (1) "acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant"; and (2) the acts and omissions of co-conspirators. *See* U.S.S.G. § 1B1.3(a)(1); *see also Pham*, 463 F.3d at 1245 (stating § 2D1.1(b)(1) may apply based on co-conspirator's firearm possession). Accordingly, our focus here must remain on the plain language of § 4C1.1(a)(7).

the zero-point offender reduction and § 4C1.1(a)(7), a defendant is ineligible for such relief if *"the defendant* did not . . . possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense." *Id.* § 5C1.2(a)(2) (emphasis added).

This Court has noted that the plain language of § 5C1.2(a)(2) requires that *the defendant* did not possess a firearm or induce another to do so. *United States v. Clavijo*, 165 F.3d 1341, 1343 (11th Cir. 1999). This Court also highlighted that created a difference from § 2D1.1(b)(1), writing: "Mere possession by a co-defendant, therefore, while sufficient to trigger section 2D1.1(b)(1), is insufficient to knock a defendant out of the safety-valve protections of section 5C1.2." *Id.* We see no reason to interpret § 4C1.1(a)(7) differently from the safety-valve provision in § 5C1.2. *See United States v. Martinez*, 964 F.3d 1329, 1338 (11th Cir. 2020) ("[W]here two guideline provisions use the same language, we presume they have the same meaning and generally interpret them the same way.").

At bottom, the district court did not make the fact findings necessary to support its conclusion that Giannantonio was ineligible for § 4C1.1's zero-point offender reduction.

The government nonetheless argues the undisputed facts of the PSI support a finding that Giannantonio constructively possessed the firearms in the 6th Avenue house. There was evidence Giannantonio sold drugs at and occasionally stayed in the 6th Avenue house where the firearms were found. During one

drug deal, Giannantonio locked a gate to the 6th Avenue's courtyard, perhaps suggesting Giannantonio had some level of control over the premises and firearms within the house. On the other hand, the PSI states Giannantonio claimed to be homeless. The PSI does not disclose specific dates when Giannantonio stayed at the 6th Avenue house, whether he had free access to the inside of the house, or how long the firearms found on June 1, 2023, had been present at the house.

In any event, the district court never made a factual finding that Giannantonio himself possessed the firearms—whether actually or constructively. We leave it to the district court to consider that issue in the first instance.

Because of the district court's error as to the zero-point offender reduction in § 4C1.1, we must vacate Giannantonio's 135-month sentence and remand for resentencing under the correct legal test for that § 4C1.1 reduction. We express no opinion as to the applicability of § 4C1.1 at the resentencing hearing.

**VACATED AND REMANDED.**